Kelsey, you may proceed. Thank you, Your Honors. I would like to reserve five minutes for rebuttal. Just watch the clock. I will. In this case, to determine what the outcome is, you have to hew to the language of the plans. And in this case, the plan permitted change of beneficiary by either telephone or Internet access. The plan documents that have been disclosed were disclosed by Xerox in Sherry Clement's declaration and is all we have in the case. McCutcheon says you can rely on a summary plan description if that's treated as part of the plan documents, and they were so identified in this case. Help us sort out what happens when there is a telephone notification, which I gather was the case in this case, but when the forms arrive with the request that they be sent and signed and returned, they never were signed and returned. How do we deal with that? The question is whether when the plan says that it can be done by phone and the claimant consistently does it by phone, can the claims administrator or the adjuster send a letter to add requirements that are not in the plan? What you're using, I guess we first have to decide what constitutes a plan document, do we not? Correct. And the plan documents don't get into this level of detail. All they say is that the beneficiary, if he's unmarried, may change the designation from time to time. If he's married, he has to get the spouse to sign off. That's the only thing that we know. It actually says more than that. It gives him a phone number to call or a website to go to to change his beneficiary. Well, you're talking about different plan documents. That's the question, right? Yeah. I mean, it's the SPDs or whatever that have the second specificity. Yeah. The defendants talked to the Peddoway case in particular to say that plan documents are more than just the plan. Right. And in the Peddoway case, they dealt with a plan, a certificate, and a summary plan description. All of these are formal documents that the plan provides. Now you have a situation where a claims administrator, not the plan, sends a letter and says, we know you've called in, but we want you to sign this additional form. I must say, I understand all the arguments in this case. They're all very fancy. It seems absurd that he didn't sign this piece of paper. I mean, it's not that unusual that if somebody wants to be sure you did something and it's really you, they ask you to sign a piece of paper. Well, I understand that. But the question is whether the claims person, the adjuster, can impose it. I understand that. I understand that. There's many arguments to be made about it, but it's a funny world in a sense. Well, the ERISA is affectionately known as everything rotten since Adam. I like that. Imaginable. Everything rotten imaginable since Adam. Another federal judge coined that, but it is sometimes kind of odd. Mr. Krafchick, one of the problems I have is that even the internal e-mail traffic by the administrator's employees seems to say that the beneficiary designation has been accomplished, but yet the forms are totally inconsistent with that. And they say if you don't sign them and return them within 30 days, then it's essentially ineffective. So I don't know what to make of this other than to think that maybe it's improper to grant summary judgment on this case because there are contested issues of material fact that a jury is going to have to sort out. I can't even tell whether the plan administrator denied the claim here by interpleading the money. It's a coverage issue. The plan allows him to interplead the funds or hold the funds until they know who to pay the benefit to. No, but what Judge Talman is asking you is that, and I have the same problem, I mean, if there was a decision by the administrator that leads to one set of approaches with regard to some level of deference perhaps, but we don't know. As far as I can tell, there wasn't one. They just didn't say, they didn't decide at all. They just said, here, court, you decide. No. This is an interpleader action in Xerox. I understand that. Yeah. I guess I would have to agree with you. What we need to know is what is the action of the administrator that determined who the beneficiary was going to be. I guess if you're asking did the administrator make the determination, I would say no. The administrator didn't. The claims adjudicator, the people who are handling the claims. So we don't even have the plan's position as to whether, in fact, the non-signature made an ineffective designation. We don't have their determination as to that. In a way, the plan punted. So in other words, all of the discussion about what the plan provides, we do not have the plan's determination as to, in fact, whether this was a screw-up on the one hand or, in fact, what the plan requires. We don't know. At this point, what you do know is that the plan provided that he could make changes by phone or Internet. Well, I understand. I'm just saying this is a different observation, which is that insofar as there's any ambiguity or lack of clarity about what was required, we do not have the plan's opinion about that. You have a planned person saying this is what happened. I understand that's what happened. We do not have a plan's decision as to that. But is what happened in the end the plan determining that Ms. May Williams was still the beneficiary or simply that that's what our records show but we don't know what's right? Actually, Judge Settle made that determination. The plan did not. Well, he's not part of the plan. No. I've got a very fundamental question. How much money are we talking about here? It's a lot of money. It's hundreds of thousands of dollars. Hundreds of thousands. But nothing has actually been deposited in the registry of the court, right? Correct. Xerox is holding it, and presumably it's earning interest. So who's holding it? Xerox plan. The plan is holding it. The plan is holding it. So they haven't paid any money to anybody. They're just simply saying we can't tell. So this isn't an interpleader? They haven't paid it? This is an interpleader case. But they didn't deposit the money. Without tendering the money to the court. Correct. All right. By agreement of parties or not? I came in after that was all said and done, so I don't know. But I didn't – what I understand is Mr. Potler, who is the attorney for Xerox, is waiting for a final order from the court to determine who gets the money. Does the complaint or the record even show what the plan's records show about who was the – That's my question, too. In the records of the plan, who is the beneficiary? That's the question. Initially, the spouse was made the beneficiary. But your position, I gather, is that it was proper by a phone instruction made by the employee to redesignate to a different beneficiary. And something must have happened after that phone call. What happened? I don't know. The records – I'm looking at ER-148, which is a call log from Sherry Clement. And she says, as a result of the telephone conversation involving a person named Alexa Dennis, I set him, referring to the decedent, up with a user ID and a PIN. I have processed Benny, B-E-N-E, designation, which I assume means beneficiary designation, and informed patient to sign and date the form and return to BC, which I assume means benefits control, so that we can update the account. What do we make of that? I mean, it looks to me like Xerox is saying he changed the beneficiary in the phone call. That's what I think happened, that there were numerous attempts to do that, and he was told, we've confirmed it, but sign this form so we really know you did it. And then there is that lead culminating in the note. Maybe you ought to be relying on ER-136, which is a recital by Xerox, Xerox pension plan pre-retirement beneficiary authorization form, showing that the primary beneficiary is Asa Williams. Is that a stand-alone document, or does it have no effect until the signature is added? They're saying it has no effect. The argument is it doesn't have an effect until the signature is provided. And we're saying, wait a minute, no, the plan allowed him to change by phone. This is proof that he made the change by phone and designated his beneficiary as Asa Williams, Jr. And he didn't do it just at one point. He did it at numerous points in the record. Is there any defense to his, let's say, refusal or at least declining to send the form back with his signature? Well, you have to remember the guy had liver cancer. He was on dialysis. His kidneys failed. He was in really lousy shape. But his sister, Laura Neely, says that he signed the form and she put it in an envelope and mailed it to Xerox. Xerox doesn't have it. Xerox has a record that they received it, but they don't have it. They have some record of having received it? They say that it wasn't signed, so we don't know if that's the same one or not. Because Laura Neely said she watched him sign it and sent it in. In February, right? Right. And then in February, Xerox sent him the forms back and said you didn't sign it. So can't we assume by inference from that circumstantial evidence that the form that got sent back to him was simply unsigned and undated? I don't know. I know that the timing gets you to assume that. How can the district court grant summary judgment on a case like this where those kinds of facts are in dispute? Well, I was a bit puzzled myself when he didn't even grant oral argument on it. So, yeah, I think the summary judgment was wrong, but I think on this record it's clear that he made the phone calls. It's clear that he made the Internet chain. And for all we know, the plans records demonstrate, they seem to demonstrate that the son was the beneficiary. That's our belief in our position, but they're saying because he didn't send the form back and we don't have the signed form, it didn't take effect. Whether it took effect or not is up to the plan, no? I believe that, and the plan did not make the decision. Counsel, you're down to less than four minutes. Your choice. I'll stop and save a little bit. Thank you. Very well. Counsel? Good morning, Your Honors. May it please the Court, my name is Marsha Ellsworth. I represent the athlete Carmen Stephanie Mays. The issues presented in this case represent one of the most common problems and challenges in ERISA plan administration, beneficiary designations in the aftermath of a divorce. In this case, Asa Williams, Jr. asked the Court to make a puzzle of plan administration as he confuses the who part of beneficiary designation. But doesn't that come down to the plan documents? As far as the plan documents are concerned, and that's the term of art, Asa is clearly the beneficiary. It was accomplished by phone. I respectfully disagree with that, Your Honor. Why? Here's why. I think the really two central issues in this case are the plan administrator's discretion. But that's the whole problem. We don't have the plan administrator either. The plan has, it appears to me that the plan has Asa Williams as the beneficiary, but do they or don't they, on their records? On their records, they do not. How do we know that? They do not. How do we know that? We know that because each time Asa Williams, Sr. allegedly phoned in and changed his beneficiary designation. I thought there were records from the plan showing that he called. Explain 140 to me then. I mean that long note written as a result of a customer call by the decedent at 2.38 p.m. on January 10, 2011, which clearly says the customer wants a beneficiary change to Asa, Jr. and I've made the change as the customer has requested. How are you entitled to summary judgment on this record? Well, we're entitled to summary judgment because the law requires that the plan participant do all he was required to do to comply with the plan administrator's regulations. What plan documents must he comply with? Doesn't the court have to decide whether or not these forms are part of the plan documents or not? Actually, I don't think so, Your Honor, and here's why. ERISA itself does not require that plan forms for beneficiary designation to be a part of the plan. All ERISA requires is that benefits be paid to designated beneficiaries. Both of these plans are silent as to the how part of the beneficiary designation and leaves it up to the discretion of the plan administrator. Are the forms part of the plan documents or not? Because as I discussed with Mr. Krafchick, the only thing that what I'll call the enabling documents that create the plan say is that the beneficiary, if he's unmarried, can change the designation from time to time. Absolutely. He doesn't say how he does it, but then Xerox apparently issued the summary of the plan documents, which says, well, you just call this toll-free number or visit our website. Easy peasy, done. So you really do need us to declare that the forms that were mailed to him, which he didn't sign and return properly, are included within the definition of plan documents, don't you? No, I don't think you do, but I think you can. But I don't think that's ultimately dispositive to these issues because I think our issues revolve around the plan administrator's discretion in deciding how to administer the plan. But the plan administrator. The plan exercised no discretion. It just dumped this whole thing onto the Western District of Washington and said to Judge Settle, you figure out who the beneficiary is because we don't know. Well, I think the plan did two things. And I think there's a case I discovered out of the Eighth Circuit on somewhat similar facts. It was decided last week, last Thursday. And this is the. . . And you have given us a site paper. Have you provided us with that site? I have not. O28J letter? No. Well, just tell me the name of it. As you probably heard in the prior case, you need to fill out the form and give it to the deputy clerk. And I will do that. But I'm dying of curiosity. Tell me the name of the case. It's Hall v. Metropolitan Life Insurance Company, decided May 8, 2014. The two issues, and I think this is really what the court is struggling with, is we have plan administrator discretion. How do we operate this plan in the best interest of. . . All right. Let's go back to ER 140 where, as Judge Tallman has noted several times, it says the representative updated the primary beneficiary for the customer as requested. And nobody, I gather, has deposed anybody from the plan to see what their records actually show as to who the beneficiary is as of 2011. We don't know that. Correct. But from what we do know, there is at least a permissible inference that when they exercise their discretion, they put him down as the beneficiary.  Why? That's what it says. But if you read further into this, and this is my whole point about plan administrator discretion, Mr. Williams, Sr. was told the who part. You can change it and make it anyone you want at any time, call in. That's the who portion of plan beneficiary designation.  The how is assumption that the plan, you're making an assumption, which seems to be contradicted by this form, by this ER 140, which is that the updating isn't done until they get the form back. But apparently the updating was actually done before that. That's the who is updated. And what they're told is it's not valid and effective. And they use that word valid until you sign the form. I will print out the form, and I will send it to you. Where are you getting that from? Where is that? What is the significance of the statement, quote, the representative updated Asa, Jr. as the primary beneficiary for the customer's pension plan, period, end quote. That sentence is totally superfluous if your position is correct. That change is not effective until he signs the forms and returns it. But it doesn't say that. Well, I think also you have to take that. I would agree with you that is clearly what the sentence says. But I think you also need to take it in context. This client services person is taking down her notes of what happened. You're correct that no discovery, this person has not been deposed. But I think when you read the notes. So why was summary judgment appropriately granted? If this isn't a material issue of fact that is contested, that it goes to the heart of this case, I don't know what a material fact question is. And I appreciate that question. And I think that goes to what's described as the substantial compliance issue. Did Mr. Williams, Sr. do all he was required to do? There's been no one's tried to ask the plan, would you please tell us what your records show? No. Well, how can we decide this case? You can decide this case because the plan told Mr. Williams, Sr. that in order to validate, that's the how portion. Where does it say that? It says that on, it says it on. Now this better be a planned document in quotes. They told Mr. Williams, Sr. Where are we? Tell me where we are. At ER 136, 137, ER 138, 139, ER 141 to 142. Those are not planned documents, that's just correspondence. That is correspondence that tells him thank you for calling. Or is it not a planned document? That's the legal issue that's in front of us right now. Is the letter a legal document? I mean, is the letter a planned document? No, the letter's not a planned document. All right. Well, that's understandable. Therefore, what's your position? My position is the plan administrator has discretion as one of the central issues of administering and operating a plan to decide how beneficiary designations will be made and how they will be validated. All right. And it was clearly made, you have on 140 the phone call and the fact that the beneficiary was changed and the evidence of that is this letter at 136, which indicates that the new beneficiary is Aza Williams, period. Exercise of discretion. Exercising of discretion in determining how those will be done. And this plan administrator exercised his discretion by telling plan participants they can call it in or do it on the website, but you will still have to sign and return the beneficiary designation in order to validate the designation. And that's my point about the who and the how. So why shouldn't we then look to Washington State law and Sun Life Assurance versus Sutter in order to determine that he substantially complied with that provision, even though he didn't actually sign the form that he returned? Two reasons. One, Sutter was decided in, I believe, 1939, well before ERISA came into play. But second and most significantly — if you look to the law of the state in order to determine the intent, it doesn't matter whether Congress enacted ERISA later, does it? I mean, that's just black-letter law. No, it doesn't matter. But here's why it doesn't matter. So what's your next distinguishing argument as to why I shouldn't rely on Sutter? Here's why. Because in Sutter, the plan documents themselves. The insurance plan said in black letters, in order to make a claim you need to write us a letter and you need to send us the original policy for, what do they call it, for endorsement.  And he did that. He sent the policy and he sent a letter, but he didn't sign it. But the plan itself, the actual insurance policy, never required him to sign it. It said write a letter and send in your policy for endorsement. In this case, and I think it's also important to — But why isn't that analogous to sending the form back, which he did, but sadly because he was dying of liver cancer and perhaps may not have been thinking very clearly, he didn't sign and date it? Well, I think what's important to keep in mind with that is that there was a slight misstatement regarding the testimony by declaration of Laura Neely, his sister. She did not in her declaration say she saw him sign it. She says — Suppose it had come back with an X and no date. Would your position be the same, that it's not signed? Yes. Okay. There's no evidence in this record ever that he was somehow incapable or unable of signing that document. Well, we know that he died in April, do we not? He died in May. May. And this is February. Right. However — And he's got liver cancer and his kidneys are in renal failure. Yes. And one of the consequences of that is that it affects your cognitive abilities because your body is not getting sufficient nutrients and oxygen to the brain. I mean, I'm still wondering why we're here on summary judgment. I just don't see how this case can be resolved. I want to help you with that. Keep trying. I'm going to point you to a couple other things in the record which I think are important in considering that in context, and that is in 2007, Mr. Williams Sr. allegedly attempted to nominate his son as his beneficiary. He called in. He was sent a letter to sign in return. He didn't do it. And that's in the record at ER 136. In 2008, he allegedly called in to sign, and he was told to sign and return a beneficiary designation. He didn't do it. In 2011, he called in again. They sent him a letter. He didn't do it. And what's also important to- We don't know what the record within Xerox's plan showed in terms of who the beneficiary was since 2008. Well, if you look at the Xerox plan, I believe there is a notation in the record that as far as they were concerned, the last beneficiary designation was Carmen Mays. And what document? Where in the record will we find that? That's at ER 166, the designation done on January 26, 1993, shortly after they were there. Well, that's 1993. Yes, 1993. What do we make of the North Carolina, I guess it's a contempt order, arising out of the divorce that the lawyer for Mr. Williams Sr. immediately sent to Xerox after the North Carolina judge entered it, putting the plan administrator on notice that they were divorced? We make nothing of that. It has no relevance to this case by virtue of the Kennedy v. Administrator of DuPont. And I will close by saying thank you. And addressing that question further, when parties are in the middle of a contentious divorce, a lot of things happen, and I think none of those things are relevant in this case. But the problem is that Sutter tells us that it's relevant to determining the intent of Williams Sr., and coupled with the three telephone calls in which he kept trying to tell Xerox, I want Junior as my beneficiary, I just don't see why this case is here on summary judgment. And I can understand that because you're seeing a question of fact, but really it's a question of law. Did he do all, under the Bank of America case, did he do all he was required to do? I think if Sutter applies, I think Sutter says that's good enough. That's substantial compliance, and we should enforce his will. Counsel, thank you very much. Thank you. Your time has expired. Mr. Krafchick, you have some reserve time. I've got a very important concession. The letters are not planned documents. And I think if the letters are not planned documents, this case is easy to resolve because he made his phone calls and he made his Internet contacts. You have the divorce decree that's not a quid pro, so it's not binding, but it is evidence of intent. His intent is consistent throughout. And the reason he doesn't start making any claims until July of 2007 is that he had a temporary restraining order that Carmen got against him to keep him from making any changes to his Xerox pension and other things in Xerox benefits that he had. So as soon as that's lifted, he goes and calls and makes the change in 2007. He tries again. He's told it's done. He's sent letters. He does it in 2008. He does it in 2011. Well, he doesn't send letters. That's the whole problem. He doesn't send the letters. But if that requirement is not part of the plan, we're done. Can we resolve this on summary judgment? I think you can resolve it on the facts of the case because you have a good Well, let me put it this way. If you're asking for reversal, of course, can we reverse in such a way as to designate AZA as the beneficiary or do we send it back for the district court to take further evidence? I don't know what further evidence the district court would take. You have clearly consistent designations by telephone and by Internet saying that AZA Williams, Jr. should be the beneficiary. If the plan's interpretation of all this mattered, we might want to know what that is, and we don't. But if it was admitted by counsel that these are not planned documents, then you go to look at the planned documents. The planned document says call this number, go to this website. He did both of those things. But they must say something more because apparently they say, and maybe they're in the form of regulations, and I don't know whether regulations are planned documents or not, but they must say you have to complete and return the forms before the designation is effective. There's nothing in a planned document that says that. They say he can call and change. The problem I have, and I realize it, was your predecessor didn't even file copies of the relevant documents as part of the pleadings in the district court. He didn't cross-move for summary judgment. So I think the answer to Judge O'Scanlan's question is quite simple. We can't direct the district court to enter summary judgment in his favor when he didn't move for summary judgment. All we can do is tell Judge Settle, you erred in entering summary judgment on this record, and here's why, and then what happens happens. Yeah, there is a rule, it's a district court rule in 56F, if you look at the records, you can make a decision and make a summary judgment order. But he didn't move for summary judgment. I mean, there are some cases that say that even if he didn't move for summary judgment, but it will have to be very, very clear, and as this discussion demonstrates, it's not very, very clear. No. And you didn't move for summary judgment. No, we didn't. But I think on this record, had we done that, we would have won. Right, but you didn't, and there are certainly some issues floating around here. One very eminent one in my mind is what does the plan think about all this, which we don't know. We know the plan thinks that he wants to wait for somebody else to make the decision. Yes, but there are. And then if you look at the plan documents, starting with 136 and all the forms there, they start out saying we've confirmed your change of beneficiary, and then they tell them you've got to sign this form. Nowhere is there any evidence that they undid that. And on this piece of paper they say, and if you don't, this isn't going to be valid. On the other hand, we have no idea whether any of the plan officials came up with this idea that you have to file it, or it was just this Hewitt person. Well, it might conveniently arise in depositions now after the fact. I don't think they have anything that's concurrent that says you have to do anything more than a phone call or an Internet change, and it doesn't say you have to sign anything. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Berzon, Tallman